**IN RE COMMITMENT OF Alonzo MAY**

**NO. 09-15-00513-CV**

Court of Appeals of Texas, Beaumont.

Submitted on July 12, 2016

Opinion Delivered July 28, 2016

---

Bob Mabry, Attorney at Law, Conroe, TX, for Appellee.

Ken Paxton, Attorney General of Texas, Bill Davis, Assistant Solicitor General, Celamaine Cunniff, Assistant Attorney General, Austin, TX, for Appellant.

Before McKeithen, C.J., Kreger and Johnson, JJ.

## OPINION

LEANNE JOHNSON, Justice

The State of Texas appealed an order releasing Alonzo May from civil commitment as a sexually violent predator. We reverse the trial court and remand the case to the trial court for entry of an order of commitment that places May into a tiered program of supervision and treatment. We conclude that the statute authorizing the civil commitment of sexually violent predators, as amended in 2015, is neither unconstitutionally retroactive nor punitive, nor has there been a denial of May's due process rights. We further conclude that the trial court's findings of fact do not support the trial court's decision to release May from civil commitment under any applicable legal theory.

### Background

In 2013, a jury unanimously found beyond a reasonable doubt that Alonzo May is a sexually violent predator. Consistent with the jury verdict, the trial court signed a final judgment wherein it "ORDERED, ADJDUGED AND DECREED that ALONZO MAY is a sexually violent predator ... and is civilly committed as such in accordance with Texas Health & Safety Code § 841.081 for outpatient treatment and supervision ..." *See generally* Act of

May 30, 2003, 78th Leg., R.S., ch. 347, § 23, 2003 Tex. Gen. Laws 1505, 1516 (amended 2015, current version at Tex. Health & Safety Code Ann. § 841.081 (West Supp. 2015)). A separate order of commitment required May to reside in supervised housing at a Texas Residential facility under contract with the Office of Violent Sex Offender Management (OVSOM), ordered May to strictly comply with the commitment requirements of Section 841.082 of the Texas Health and Safety Code, and scheduled a biennial review for July 24, 2015. *See* Act of May 23, 2011, 82nd Leg., R.S., ch. 1201, § 8, 2011 Tex. Sess. Law. Serv. 3195, 3200 (amended 2015, current version at Tex. Health & Safety Code § 841.082 (West Supp. 2015)). The judgment and the order of civil commitment were affirmed on appeal. *See In re Commitment of May*, No. 09–13–00513–CV, 2014 WL 6984086, at *3, 2014 Tex. App. LEXIS 13273, at *6 (Tex.App.—Beaumont Dec. 11, 2014, pet. denied) (mem. op.).

Effective June 17, 2015, Senate Bill 746 amended Chapter 841 of the Texas Health and Safety Code in several respects. *See* Act of May 21, 2015, 84th Leg., R.S., ch. 845, 2015 Tex. Sess. Law Serv. 2701, 2701-12. The Legislature created a new state agency, the Texas Civil Commitment Office (TCCO), with the responsibility for treatment and supervision of sexually violent predators.[1] *Id.* § 3 (current version at Tex. Health & Safety Code Ann. § 841.007 (West Supp. 2015)). The Legislature required the TCCO to develop a tiered program of supervision and treatment that provides a seamless transition from a total confinement facility to less restrictive housing and supervision and eventual re-

lease from civil commitment, based on the person's behavior and progress in treatment. *Id.* § 16 (current version at Tex. Health & Safety Code Ann. § 841.0831 (West Supp. 2015)). Under the statute as amended, the TCCO transfers a committed person to less restrictive housing and supervision if the transfer is in the best interests of the person and conditions can be imposed that adequately protect the community, and a committed person may petition the court for a transfer to less restrictive housing and supervision. *Id.* (current version at Tex. Health & Safety Code § 841.0834 (West Supp. 2015)). The enacting language of SB 746 provides:

> If a civil commitment requirement imposed under Chapter 841, Health and Safety Code, before the effective date of this Act differs from any of the civil commitment requirements listed in Section 841.082, Health and Safety Code, as amended by this Act, the applicable court with jurisdiction over the committed person shall, after notice and hearing, modify the requirement imposed as applicable to conform to that section.

*Id.* § 40(b).

In July 2015, the TCCO notified May of the changes in the law. The State filed an opposed motion to place May in the tiered treatment program. After a hearing, the trial court ordered that May could not be placed in the tiered treatment program, finding:

> 1. ALONZO MAY was adjudicated a sexually violent predator ("SVP") by Agreed Final Judgment and civilly committed on July 24, 2013 by Agreed Order of Commitment.

---

1. *See* Tex. Gov't Code Ann. § 420A.002 (West Supp. 2015). Throughout this opinion we refer to the Texas Civil Commitment Office by its acronym, "TCCO." We refer to its predecessor agency, the Office of Violent Sex Of-

fender Management, as "OVSOM." In some places in this opinion, we refer to Chapter 841 of the Texas Health and Safety Code as "the SVP statute."

2. At the last Biennial Review for ALONZO MAY, Relator ALONZO MAY's behavioral abnormality, which causes him to engage in predatory acts of sexual violence, was still present.

3. The witness testimony and the evidence presented demonstrate that ALONZO MAY's behavior and progress in treatment will not benefit from placement in the Tiered Treatment Program.

4. The witness testimony and the evidence presented demonstrate that placement in the Tiered Treatment Program will not be in the best interest of ALONZO MAY and conditions can be imposed that adequately protect the community.

The State filed a motion for reconsideration. May filed a response raising several challenges to the 2015 amendments to Chapter 841 and to TCCO's implementation of the tiered treatment program.

On November 9, 2015, the elected judge in the 435th District Court signed a biennial review order that found "there is no evidence to suggest that sex offender treatment of ALONZO MAY has resulted in his behavioral abnormality having changed to the extent that ALONZO MAY is no longer likely to engage in a predatory act of sexual violence[.]"[2]

After a hearing, on December 14, 2015, a visiting judge sitting in the 435th District Court ordered May's release from the civil commitment imposed on him by the judgment and order of civil commitment. Findings of fact and conclusions of law signed in connection with the judgment included findings that:

1. On July 24, 2013 the trial court signed a Final Judgment as the result of a

Montgomery County jury's verdict that Alonzo May was a sexually violent predator. Whereupon the trial court signed an Order of Commitment that Alonzo May was indefinitely committed for *outpatient* treatment and supervision.

2. Evidence submitted to the jury showed that Alonzo May had been convicted of several sex crimes, served out the punishments imposed, and released from criminal confinement.

3. On June 17, 2015 SB 746 amended Chapter 841 of the Texas Health and Safety Code, ending funding for *outpatient* treatment and requiring those in Alonzo May's circumstance to attend a "due process" hearing in advance of being committed to "tiered *inpatient* treatment".

4. Although called "due process" the only possible result that would provide any treatment was tiered *inpatient* treatment.

5. Alonzo May did not waive a hearing. At the conclusion of the September 09, 2015 hearing, the trial court denied the State's petition to transfer Alonzo May from *outpatient* to tiered *inpatient* treatment. The State then moved for reconsideration. After discovery by Alonzo May, the December 08, 2015 hearing was conducted.

6. Although not having been convicted of new sex crimes or for that matter any crimes, committed persons such as Alonzo May were to begin tiered *inpatient* treatment in total confinement for an indeterminate period, historically much longer than a definite prison sentence.

**2.** The elected judge conducted the biennial review, while a visiting judge conducted the

hearings and made the rulings that are at issue in this appeal.

7. The place of confinement, the Bill Clayton Detention Center or private prison at Littlefield, Texas has two chain link fences topped by concertina wire around its perimeter and all the characteristics of a Texas Department of Criminal Justice prison facility.

8. The confinement to which Alonzo May would be subjected if ordered into tiered *inpatient* treatment is substantively and substantially more oppressive than that required by the July 24, 2013 Order of Commitment.

9. There was no credible evidence presented that tiered *inpatient* treatment would provide better benefits to Alonzo May than *outpatient* treatment required by the July 24, 2013 Order of Commitment.

The trial court also included two conclusions of law: (1) "Texas Health and Safety Code Chapter 841 as amended by the 2015 Senate Bill 746 fails to meet Constitutional muster in that the requisite involuntary commitment of Alonzo May pursuant thereto is, retroactive, punitive and a denial of Alonzo May's due process rights under the both Texas and U.S. Constitutions[,]" and (2) "Therefore, Alonzo May shall be released from civil commitment forthwith." The State appealed the trial court's final judgment.

In two issues, the State: (1) challenges the trial court's finding that "Chapter 841 as amended by the 2015 Senate Bill 746 fails to meet [c]onstitutional muster in that the requisite involuntary commitment of Alonzo May pursuant thereto is" either (A) "retroactive" or (B) "punitive and a denial of ... May's due process rights under the ... Texas and U.S. Constitutions[;]" and (2) argues the trial court's findings of fact do not support releasing May from civil commitment under any legal theory.

### Constitutionality of the Statute

■ May has been judicially determined to be a sexually violent predator, and no court or jury has determined that May's behavioral abnormality has changed to the extent that he is no longer likely to engage in a predatory act of sexual violence. Although May has a condition that makes him a menace to the health and safety of others, the trial court ordered May released from civil commitment because the trial court concluded that retaining May in civil commitment under the tiered program would violate May's rights under the Texas and U.S. Constitutions.

We have previously upheld the constitutionality of Chapter 841 of the Texas Health and Safety Code as it was originally enacted. *Beasley v. Molett*, 95 S.W.3d 590, 596–97 (Tex.App.—Beaumont 2002, pet. denied). Additionally, in 2005, the Texas Supreme Court reversed a lower court's holding that Chapter 841 is unconstitutionally punitive and held that Chapter 841 is a civil statute. *See In re Commitment of Fisher*, 164 S.W.3d 637, 656 (Tex.2005). The findings of fact and conclusions of law that have been signed in May's case indicate that the trial court ruled that, as amended in 2015, Chapter 841 of the Texas Health and Safety Code is unconstitutionally retroactive, punitive, and denies due process because: (1) what previously was outpatient treatment when the Texas Supreme Court decided *Fisher* became inpatient treatment in the tiered program created in 2015; and (2) at the time of the hearing on the State's motion to modify May's commitment order, the TCCO's sole treatment facility was located in a former juvenile detention center.

a. Punitive Effect of Statute

■ "An analysis of the constitutionality of a statute begins with a presumption of validity." *Id.* at 645. The legislative

findings for the SVP statute state that public safety and long-term treatment—not punishment—are the primary statutory goals of Chapter 841 of the Health and Safety Code. *See* Tex. Health & Safety Code Ann. § 841.001 (West 2010). A court may reject the Legislature's manifest intent to create a civil statute only upon the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the intention to deem it civil. *Id.* at 647 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)). Factors that may be considered in determining the punitive effect of a statute include: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). We address these factors in light of the Texas Supreme Court's decision in *Fisher* and consider the effect, if any, the subsequent amendments to the statute had on the previous analyses in *Fisher* and the application of other binding precedent.

1. Affirmative disability or restraint. In *Fisher*, the Texas Supreme Court acknowledged that the SVP statute imposes affirmative disabilities on civilly committed persons, such as requiring the person to reside at a particular location, to remain within the State of Texas, and wear satellite monitoring equipment. 164 S.W.3d at 648. The Texas Supreme Court noted that the Texas civil commitment statute imposed affirmative disabilities and restraints that were "certainly no greater than the inpatient commitment held to be civil in *Hendricks*[,]" and the Court held that this factor alone does not compel a conclusion that the statute is punitive. *Id.* (citing *Hendricks*, 521 U.S. at 363, 117 S.Ct. 2072). As originally enacted, Chapter 841 authorized the trial court to impose on a civilly committed person requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community; the statute was amended in 2003 to allow a trial court to modify requirements for civilly committed persons, and in 2005 and 2011, to require the trial court to order a civilly committed person to reside in a Texas residential facility under contract with the TCCO's predecessor agencies, the Council on Sex Offender Treatment and OVSOM. *See In re Commitment of Cortez*, 405 S.W.3d 929, 935–36 (Tex.App.—Beaumont 2013, no pet.).

This Court has previously considered and rejected a committed person's argument that the SVP statute was unconstitutional as applied to him because he had not received outpatient treatment, was required to wear a leg monitor, and required to live at a camera-monitored transitional facility, enclosed by a fence topped with barbed wire, where he was required to remain unless given permission to leave. *See In re Commitment of Dodson*, 434 S.W.3d 742, 745 (Tex.App.—Beaumont 2014, pet. denied). We held the statute was not unconstitutionally punitive. *Id.* at 747. We rejected Dodson's argument that the commitment was punitive because it was indefinite, noting that the SVP statute provides a biennial review of status as well as the right to file an unauthorized petition for release. *Id.* at 746.

In the case now before us, the trial court found the tiered inpatient treatment would

be more oppressive than May's former outpatient treatment. Nevertheless, outpatient treatment as it existed in 2012 when May was first civilly committed required May to wear a GPS leg monitor and live in a transitional facility enclosed by barbed wire. *See id.* The trial court found that the place of confinement has chain link fencing with concertina wire and characteristics of a prison facility, and that the inpatient treatment is substantively and substantially more oppressive than that required by the July 24, 2013 Order of Commitment. Even assuming such facts to be true, those findings would not compel or support a conclusion that the statute is punitive. *See Fisher*, 164 S.W.3d at 648, 653; *Dodson*, 434 S.W.3d at 747.

2. *Historically not regarded as punishment.* Historically, civil commitment of sexually violent predators has not been viewed as punishment. *Fisher*, 164 S.W.3d at 648 (citing *Hendricks*, 521 U.S. at 363, 117 S.Ct. 2072). In this case, the trial court found that the tiered inpatient treatment confinement period was "historically much longer than a definite prison sentence[,]" but we rejected the same argument based on indefinite commitment in *Dodson*, 434 S.W.3d at 746–47. Like Dodson, May can obtain his release from the restrictions placed on him if his behavioral abnormality changes to the extent he is no longer likely to engage in a predatory act of sexual violence. *See id.* Furthermore, the tiered supervision and treatment program implemented under the 2015 amendment to the SVP statute includes the possible transition to less restrictive housing and eventually to release from civil commitment entirely, based upon the person's behavior and progress in treatment. *See* Tex. Health & Safety Code Ann. § 841.0831 (West Supp. 2015). This factor weighs against finding a punitive effect.

3. *Finding of scienter.* In *Fisher*, the Texas Supreme Court held that Chapter 841 of the Texas Health and Safety Code lacks the scienter requirement typically found in criminal statutes. 164 S.W.3d at 649. Similarly, in *Beasley* this Court held that commitment under the SVP statute involves no finding of scienter. 95 S.W.3d at 607. Additionally, we previously rejected an argument that the SVP statute allows a jury to retrospectively determine whether a crime was sexually motivated in an appeal by a person who was civilly committed after his release from prison for committing burglary with intent to commit rape. *See In re Commitment of Miller*, 262 S.W.3d 877, 884–86 (Tex.App.—Beaumont 2008, pet. denied). This factor weighs against finding a punitive effect.

4. *Traditional aims of punishment.* In *Hendricks*, the Supreme Court recognized that the primary objectives of criminal punishment, retribution and deterrence were not implicated by a civil commitment statute that does not fix liability for prior criminal conduct. 521 U.S. at 361–62, 117 S.Ct. 2072. As amended in 2015, a person may no longer be deemed to be a repeat violent sexual offender after being found to be not guilty by reason of insanity. *See* Tex. Health & Safety Code Ann. § 841.003 (West Supp. 2015). Nevertheless, the commitment determination is made based upon a mental abnormality rather than one's criminal intent, and because the commitment is for sex offender treatment, the deterrent effect is incidental. *Fisher*, 164 S.W.3d at 649–50. We conclude this factor also does not compel a conclusion that the statute is punitive.

5. *Criminality of behavior.* Generally, "a statute that applies to behavior that is already a crime is more likely to be considered to be punitive." *Id.* at 650. *Fisher* noted that because the SVP statute did not categorically apply only to convicted indi-

viduals, this factor did not weigh in favor of finding that Chapter 841 of the Health and Safety Code is punitive. *Id.* at 650–51 ("In this case, the Act defines 'repeat sexually violent offender' to include both individuals convicted of sexually violent offenses and those adjudged not guilty by reason of insanity. [citation omitted] Because the Act does not categorically apply only to convicted individuals, this factor does not weigh in favor of finding that the Act is punitive.") Under the recent amendments, the Legislature deleted the language referencing persons adjudged not guilty by reason of insanity. *See* Tex. Health & Safety Code Ann. § 841.003(b). In its discussion on this factor, *Fisher* cited to a criminal case concerning a sex offender registration statute. 164 S.W.3d at 650 (citing *Rodriguez v. State,* 93 S.W.3d 60, 74 (Tex.Crim.App.2002)). In *Rodriguez,* the Court of Criminal Appeals noted that although registration triggered by a conviction is "indicative of a punitive intent, it is not especially crucial in ferreting out the true character of the sanction in question." 93 S.W.3d at 74. Simply because the SVP statute now applies to those persons who have been convicted of more than one sexually violent offense, and no longer includes a person who is adjudged not guilty by reason of insanity, this factor alone is not sufficient to render the statute criminally punitive. *See id.*

6. Alternative purpose. *Fisher* held the State's legitimate interest in providing sex offender treatment to a person whose emotional or mental disorder makes the person unable to control sexually violent behavior, along with the State's compelling need to protect the public from harm, are the overriding concerns of Chapter 841 of the Texas Health and Safety Code. 164 S.W.3d at 651; *see* Tex. Health & Safety Code Ann. § 841.001. *Fisher* determined that the SVP statute is rationally connected to the goals of long-term supervision and treatment.

164 S.W.3d at 651. We conclude that these goals have not been supplanted or diminished under the 2015 amendments to Chapter 841 of the Texas Health & Safety Code. This factor weighs against finding a punitive effect.

7. Excessiveness. *Fisher* reasoned that the Texas SVP statute was notably different from the Kansas statute at issue in *Hendricks* because the Texas statute made the violation of a civil commitment order a third degree felony. 164 S.W.3d at 652–53. The 2015 amendments to Chapter 841 continue to require a determination that a person currently has a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003(a)(2). The person's inability to control behavior "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Kansas v. Crane,* 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). The amendments enacted in SB 746 also limit the circumstances under which a person may be held criminally responsible for non-compliance with an order of civil commitment. Tex. Health & Safety Code § 841.085 (West Supp. 2015). Therefore, we conclude that the criminal penalties attached to a violation of a commitment requirement do not make the commitment scheme punitive.

The trial court found that the tiered treatment program was substantively more oppressive than the outpatient treatment ordered in May's initial civil commitment, but the 2013 civil commitment order required May to live in supervised housing at an OVSOM-contracted Texas residential facility, submit to tracking under a global positioning satellite, and participate in sex

offender treatment. Furthermore, the statute upheld in *Hendricks* provided that civilly committed sexually violent predators would be housed in a prison unit segregated from the general prison population. 521 U.S. at 368, 117 S.Ct. 2072.[3] Therefore, use of a former prison to house sexually violent predators, or requiring inpatient treatment in a facility with such characteristics would not weigh heavily in favor of a finding that it is punitive.

May has wholly failed to provide "the clearest proof" that the statute's effects are punitive. Rather, as in *Fisher*, taken together, the factors considered in determining whether this civil statute, as amended, is punitive point to a conclusion that a commitment proceeding under Chapter 841 of the Texas Health and Safety Code, as amended in 2015, is a civil matter.

b. Retroactivity

■■ In response to the State's motion to reconsider the trial court's order denying the State's motion to place May into the tiered treatment program, May argued that the civil commitment judgment ordering outpatient treatment was a contract between May and the State giving him a vested right to outpatient treatment, and granting the motion would violate Article I, Section 16 of the Texas Constitution, which prohibits bills of attainder, ex post facto laws, or any law impairing the obligations of contracts. "[R]etroactivity challenges are, by definition, as-applied constitutional challenges." *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 710 (Tex.2014).

May argued at the hearing before the trial court that the 2015 amendments to the SVP statute altered the 2013 judgment that ordered him to submit to outpatient

treatment because he will be required to reside in a prison indefinitely. The 2015 amendments to the SVP statute permit movement to less restrictive housing based on the person's behavior or progress in treatment. *See* Tex. Health & Safety Code Ann. § 841.0834. Furthermore, from our review of the record, it is evident that the 2013 judgment and order of civil commitment permitted the treating agency to house May in the facility in question and provide sex offender treatment to him until it is judicially determined that his behavioral abnormality has changed to the extent that May is no longer likely to engage in a predatory act of sexual violence.

When the trial court committed May for outpatient treatment and supervision in 2013, it ordered May to "reside in supervised housing at a Texas residential facility under contract with [OVSOM] or at another [location] or facility approved by [OVSOM,]" and ordered May to "exactingly participate in and comply with a specific course of treatment provided by [OVSOM.]" Janet Latham, a TCCO grant specialist who helped design the tiered program, testified that since 2005, all of the civilly committed persons have resided in halfway houses. Before September 1, 2015, the Texas population of civilly committed sexually violent predators were housed in six facilities. Latham testified that the new facility in Littlefield had security and locked doors that restricted the residents' movements, but the residents move throughout the facility to attend treatment, work, and recreation during the day. May had not yet been evaluated for placement in the tiered program and it had not been determined what tier he would be in, but according to Latham, persons who

---

**3.** The statute in *Hendricks* also provided for " 'secure' " confinement and " 'incarceration against one's will.' " *Kansas v. Hendricks*, 521 U.S. 346, 379, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

transitioned into the tiered program would not have to start over and would not be placed in tier one. The Texas Commitment Center in Littlefield was designed to be as inclusive as possible so that everything that the residents need or may be entitled to receive is available at Littlefield. Amy Goldstein, the clinical director at the Texas Civil Commitment Center in Littlefield, testified that the tiered program included sex offender treatment personalized for the resident based on offending patterns and behaviors, therapeutic study hall, dorm meetings, substance abuse education, anger management, life skills, and cognitive behavioral treatment. The tiered program is designed for a person to progress through each of four tiers in twelve to eighteen months. According to Goldstein, a person's sexual offense history does not impact the tier in which the person is placed, but the respective tier in which the person is placed relates to the sex offender treatment the person has previously completed.

We have previously held that the SVP statute is remedial and not punitive, and Chapter 841 does not violate the constitutional prohibition against retroactive laws as applied to a person who committed his sexual offenses before the statute's enactment. *In re Commitment of Mailhot*, No. 09–13–00270–CV, 2015 WL 182699, at *2, 2015 Tex. App. LEXIS 332, at **5–6 (Tex. App.—Beaumont Jan. 15, 2015, pet. denied) (mem. op.); *Dodson*, 434 S.W.3d at 747–48. May's retroactivity challenge to the statute differs in one respect to the challenges presented in *Mailhot* and *Dodson* because May has not challenged his commitment but has challenged the modification of the sex offender treatment program from an "outpatient" to an "inpatient" modality. Nevertheless, May's case bears some similarity to *Cortez*, 405 S.W.3d at 934. In a due process challenge that arose when the Legislature changed

the treating agency and created OVSOM, Cortez argued the trial court deprived him of a liberty interest by changing the treatment provider, and he argued that he had a vested interest in the outpatient commitment requirements contained in his original commitment order. *Id.* at 934–35. Noting that Section 841.082 of the Texas Health and Safety Code required that the trial court order a civilly committed person to reside in a Texas residential facility under contract with OVSOM and allowed the trial court to modify the commitment order at any time after notice and a hearing, we reasoned that Cortez lost his right to control the location of his residence when he was committed, and we held that the trial court could order Cortez to reside in an OVSOM-approved facility notwithstanding the original order committing Cortez to "outpatient" sex offender treatment. *Id.* at 934–36.

█ In determining whether a statute violates the Texas Constitution's prohibition against retroactive laws, "[n]o bright-line test for unconstitutional retroactivity is possible." *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 145 (Tex.2010). Rather, to determine whether a statute is unconstitutionally retroactive, courts must consider three factors in light of the prohibition's dual objectives: (1) the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings; (2) the nature of the prior right impaired by the statute; and (3) the extent of the impairment. *Id.* The Legislature has determined that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the State because the pre-existing treatment modalities for sexually violent predators were inadequate to address the risk of repeated predatory behavior that sexually violent predators pose to humanity. *See*

Tex. Health & Safety Code Ann. § 841.001. The public interest served by Chapter 841 includes: "(1) the *parens patriae* power to provide care to its citizens who are unable because of emotional disorders to care for themselves; and (2) the police power to protect the community from the dangerous tendencies of some who lack volitional control over certain types of dangerous behaviors." *In re Commitment of Rushing*, No. 09–11–00268–CV, 2012 WL 4466421, at *2, 2012 Tex. App. LEXIS 8140, at **5-6 (Tex.App.—Beaumont Sept. 27, 2012, no pet.) (mem. op.).

◼ May argued at the hearing that he had a right to outpatient care and that such right was impaired by the 2015 amendments to Chapter 841. As we previously reasoned in *Cortez*, May lost his right to control the location of his residence when he was committed. 405 S.W.3d at 934–36. May argues the use of an outpatient modality under the previous version of the statute demonstrates that inpatient sex offender treatment is unnecessary, "[b]ut the necessity and appropriateness of legislation are generally not matters the judiciary is able to assess." *Robinson*, 335 S.W.3d at 146. Changes in the law that merely affect remedies or procedure, or that otherwise have little impact on prior rights, are usually not unconstitutionally retroactive. *Id.* When May was civilly committed in 2013, the Legislature provided that settled expectations included having the treating agency determine where May would reside and the sex offender treatment he would receive. The State's need to operate a sex offender treatment program for sexually violent offenders who have discharged their criminal sentences justifies requiring a person to receive sex offender treatment at the general location where he resides, as determined by the TCCO, which by statute now includes a tiered program with "inpatient" as op-

posed to "outpatient" treatment. We conclude that Chapter 841, as amended in 2015, does not violate the constitutional prohibition against retroactive laws.

### Due Process

◼ The enacting language of SB 746 requires notice and a hearing before the trial court modifies any civil commitment requirement to conform to the statutory amendments. *See* 2015 Tex. Sess. Law Serv. at 2711. May contends his due process challenge is not to the constitutionality of inpatient treatment in itself, but to modifying the existing order without re-initiating the process for an initial civil commitment. In an initial civil commitment proceeding, if a jury trial is requested a jury must determine if a person is a sexually violent predator; that is, whether the person suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. §§ 841.061 (West Supp. 2015), 841.062 (West 2010); *see also id.* §§ 841.002(2), 841.003(a) (West Supp. 2015). The trial court imposes the requirements contained in the civil commitment order. *See id.* § 841.082 (West Supp. 2015). The jury does not determine the terms and requirements of the civil commitment order. *See id.* The statute provides for notice and a hearing before the trial court modifies any civil commitment to conform it to the statutory amendments, and the jury would not be called upon to decide the conditions of May's sex offender treatment in the first instance. Therefore, we conclude that it is not a violation of due process to submit modifications to the judge rather than a jury.

May also suggests that due process requires that before the trial court modifies a civil commitment order a person must be provided the right to counsel, the right for time to prepare discovery and defenses,

and a right to appeal. We need not determine whether due process requires these protections because May was represented by counsel in the hearing on the State's motion to reconsider and the trial court granted May additional discovery before the hearing.[4]

### Review of the Trial Court's Conclusions of Law

 An appellate court reviews questions of law *de novo. City of Austin v. Whittington*, 384 S.W.3d 766, 788 (Tex. 2012). We review the trial court's legal conclusions drawn from the facts to determine their correctness. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). The trial court concluded that the civil commitment of May under the amended SVP statute was retroactive, punitive and a denial of May's due process rights. The trial court's conclusion that May is entitled to release from civil commitment depended on the validity of the trial court's conclusions regarding the constitutionality of Chapter 841 of the Health and Safety Code. We have concluded that the trial court's conclusions regarding the constitutionality of the statute were incorrect.

 Several procedural mechanisms exist to release a person from an order of civil commitment, but each requires a factual finding that the person's behavioral abnormality has changed to the extent that he is no longer likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. §§ 841.102, 841.121, 841.124 (West Supp. 2015). In the biennial review of May's commitment, the trial court found that a behavioral abnormality was still present which causes May to be likely to engage in predatory acts of sexual violence. The trial court made no contrary finding at any subsequent hearing, and that finding has not been challenged in this appeal. Therefore, the trial court also abused its discretion by ordering May's release from the judgment and order of civil commitment in the absence of a proper fact-finder's determination that May's behavioral abnormality has changed to the extent that he is no longer likely to engage in a predatory act of sexual violence. *See id.*

### Conclusion

We reverse the trial court's order of September 9, 2015, which denied the State's motion to place May in the tiered treatment program, and we reverse the trial court's judgment signed December 14, 2015, which ordered May's release from civil commitment. We remand the case to the trial court for entry of an order modifying the civil commitment order, and committing May to the tiered sex offender treatment program provided by the Texas Civil Commitment Office. *See* Tex. Health & Safety Code Ann. § 841.082(a)(3).

**REVERSED AND REMANDED.**

---

4. Furthermore, even assuming without deciding that May was entitled to such rights in this civil proceeding, the appropriate relief for such a violation logically would be a new hearing in which due process was provided, not release from civil commitment as ordered by the trial court. *See, e.g., McIntire v. State,* 698 S.W.2d 652, 662 (Tex.Crim.App.1985) (appropriate relief for a due process denial of a hearing on a motion for new trial alleging jury misconduct was a remand to determine if a new trial hearing was feasible three years after jury trial).