In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00486-CV**

_____

**IN RE COMMITMENT OF CEBERO GARCIA OCHOA**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 15-05-04646-CV**

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Cebero Garcia Ochoa (Ochoa) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2016) (SVP statute).[1] A jury found that Ochoa is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Ochoa filed a motion for new trial. The court denied the motion for new trial. Ochoa filed a notice of appeal. In three issues, Ochoa asserts

---

[1] Throughout this opinion, we cite to the current version of the statute unless a previous version of the statute applies and the subsequent amendments would materially affect our analysis.

that (1) the trial court erred in denying his motion to dismiss, (2) the trial court erred in failing to limit the scope of testimony provided by the State's expert, Dr. Gaines, and, (3) the SVP statute, as amended, is unconstitutional.

## BACKGROUND FACTS

In 2010, Ochoa pleaded no contest to an assault charge in municipal court and was convicted, and the complaint alleged he touched S.M.'s "butt cheek[.]"[2] In 2012, Ochoa was convicted of sexual assault of J.D. and of an attempted sexual assault of M.M. Ochoa pleaded guilty to both offenses and received a five-year sentence for each offense. Dr. Gaines diagnosed Ochoa with "other specified paraphilic disorder[,]" antisocial personality disorder, benzodiazepine use disorder in remission in a controlled environment, cannabis use disorder, and Dr. Gaines found that Ochoa suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

## MOTION TO DISMISS

In his first issue, Ochoa argues that the trial court erred in denying "Respondent's Motion to Dismiss Baseless Cause of Action[.]" Ochoa asserted in the motion that the State's petition has "no basis in law because Dr. Dunham did

---

[2] We identify the vicitms by using initials. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairnesss and with respect for the victim's dignity and privacy throughout the criminal justice process").

not test [Ochoa] for psychopathy[,]" as required by section 841.023(a) of the SVP statute.[3] When reviewing a motion to dismiss that alleges there is no basis in law for a claim, we exercise de novo review and construe the pleadings liberally in favor of the plaintiff. *See Wooley v. Schaffer*, 447 S.W.3d 71, 75-76 (Tex. App.— Houston [14th Dist.] 2014, pet. denied).

Section 841.022 of the Texas Health and Safety Code provides that the executive director of the TDCJ and the commissioner of the Department of State Health Services shall establish a multidisciplinary team (MDT) to review available records of a person referred to the MDT. *See* Tex. Health & Safety Code Ann. § 841.022 (West Supp. 2015). The MDT "may request the assistance of other persons in making an assessment under this section." *Id.* § 841.022(b).

Under section 841.023, after the MDT has made a recommendation under section 841.022(c), the TDCJ shall make an assessment. *See id.* § 841.023 (West Supp. 2015).

> (a) Not later than the 60th day after the date of a recommendation under Section 841.022(c), the Texas Department of Criminal Justice or the Department of State Health Services, as appropriate, shall assess whether the person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual

---

[3] Dr. Dunham was hired by TDCJ to evaluate Ochoa for a behavioral abnormality. *See* Tex. Health & Safety Code Ann. § 841.023(a) (West Supp. 2015).

violence. To aid in the assessment, the department required to make the assessment shall use an expert to examine the person. That department may contract for the expert services required by this subsection. The expert shall make a clinical assessment based on testing for psychopathy, a clinical interview, and other appropriate assessments and techniques to aid the department in its assessment.

(b)  If as a result of the assessment the Texas Department of Criminal Justice or the Department of State Health Services believes that the person suffers from a behavioral abnormality, the department making the assessment shall give notice of that assessment and provide corresponding documentation to the attorney representing the state not later than the 60th day after the date of a recommendation under Section 841.022(c).

*Id.* § 841.023. If a person is referred under section 841.023 to the State's attorney, "the attorney may file . . . a petition alleging that the person is a sexually violent predator and stating facts sufficient to support the allegation." *Id.* § 841.041(a) (West Supp. 2016).

Dr. Dunham's report included the following:

Prior to the attempted interview, Mr. Ochoa was informed of the nature and purpose of the evaluation, of the non-confidential nature of the evaluation, of the parties who would receive a copy of the forensic report, and of the voluntary nature of the interview. He was informed that if he chose to decline the interview, the evaluation would still be conducted, and a report would still be generated. After being informed of his rights, Mr. Ochoa asked several questions, and I had to repeat the notification process several times. He never consented to be interviewed. He seemed to have difficulty understanding the notification because of his lower level of intellectual functioning. Although a certified Spanish-speaking

4

interpreter was utilized to assist with translation, Mr. Ochoa's inability to comprehend the situation was more concerning than any language barrier. In the end, he expressed concerns about agreeing to something that he did not completely understand. He ultimately stated that he would rather speak with an attorney first before agreeing to an interview. As such, Mr. Ochoa essentially declined the interview for legal purposes.

Under the section of the report entitled "Assessment for Psychopathy[,]" Dr. Dunham noted the following:

Because an interview with Mr. Ochoa was not conducted, an assessment for psychopathy would have been limited to the records available. Although this is sometimes feasible, it is not so in this particular case due to the extreme lack of information contained within Mr. Ochoa's file. As such, I elected not to administer testing for psychopathy.

Dr. Dunham's report noted that he utilized the Static-99R actuarial, which placed Ochoa in the category for a high risk for sexual re-offense. Dr. Dunham also states in the report that despite the fact Ochoa declined the clinical interview Dr. Dunham was able to make behavioral observations and diagnostic impressions regarding Ochoa. Dr. Dunham concluded in his report that "based upon the records reviewed and testing conducted . . . Mr. Ochoa represents a High risk for sexual re-offense and does suffer from a behavioral abnormality that makes him likely to engage in future acts of predatory sexual violence." TDCJ subsequently determined that Ochoa suffers from a behavioral abnormality and referred the case to the Special Prosecution Unit. The Special Prosecution Unit then filed a petition against Ochoa.

5

The appellate record includes a transcript of the reporter's record from the hearing on the motion to dismiss. The State requested that Dr. Dunham be allowed another opportunity to test for psychopathy but Ochoa opposed any additional evaluation or testing by Dr. Dunham. The trial court denied the motion to dismiss the cause of action and ordered Dr. Dunham to conduct a clinic interview of Ochoa for the limited purpose of making an assessment for psychopathy.

The expert's "clinical assessment" assists the MDT in making its assessment and recommendation. *In re Commitment of Alvarado*, No. 09-13-00217-CV, 2014 Tex. App. LEXIS 3343, at **11-12 (Tex. App.—Beaumont Mar. 27, 2014, pet. denied) (mem. op.). As we stated in *Alvarado*, "[t]here is no language in the statute that indicates the legislature intended for the expert's 'clinical assessment' to be a jurisdictional requirement before suit can be filed. *Id*. at *11. In the instant case, although Ochoa's counsel stated at the hearing that Ochoa declined the clinical interview because of a language barrier, Dr. Dunham's report indicates that a Spanish-speaking interpreter assisted in the interview. Section 841.061(f) of the SVP statute evidences the legislature's intent in preventing a person from avoiding civil commitment by refusing to cooperate in an expert examination by providing consequences for failing to submit to expert examinations. *See* Tex. Health & Safety Code Ann. § 841.061(f) (West Supp. 2015). The trial court did not err in

denying Ochoa's motion to dismiss. *See Alvarado*, 2014 Tex. App. LEXIS 3343, at **11-12. We overrule Ochoa's first issue.

SCOPE OF DR. GAINES'S TESTIMONY

In his second issue, Ochoa argues that the trial court erred in failing to limit the scope of the testimony of Dr. Gaines, the State's expert, because, according to Ochoa, Dr. Gaines could not provide the bases for the opinions of the consulting experts upon which she relied in forming her opinion. We review a trial court's evidentiary rulings under an abuse of discretion standard of review. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see In re Commitment of Salazar*, No. 09-07-345 CV, 2008 Tex. App. LEXIS 8856, at *19 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) (mem. op.). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts arbitrarily and unreasonably. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). A judgment will not be reversed based on the admission of evidence unless the appellant establishes that the trial court's ruling was in error and that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Salazar*, 2008 Tex. App. LEXIS 8856, at *5; *see also* Tex. R. App. P. 44.1(a).

7

Following voir dire, Ochoa requested a gatekeeper hearing regarding the admissibility of the testimony of the State's expert witness, Dr. Sheri Gaines. At the hearing, Dr. Gaines testified that she is a medical doctor and a psychiatrist and has conducted approximately 109 behavioral abnormality evaluations. She testified that as part of her methodology she typically conducts her own clinical evaluation of the respondent and conducts her own review of the records, and that she followed this methodology in Ochoa's case. She explained she reviewed and relied on the opinions of two consulting experts, Dr. Dunham and Dr. Turner, who found that Ochoa suffers from a behavior abnormality. She explained that she came to her own opinion in the case regarding whether Ochoa had a behavioral abnormality and was not simply parroting psychologists Dr. Dunham's or Dr. Turner's opinions. She testified she is not trained to score actuarials, she considered Dr. Dunham's and Dr. Turner's scores from the actuarials they administered to Ochoa, and she had no reason to question the reliability of the scores or Dr. Dunham's or Dr. Turner's methodologies. Dr. Gaines testified that although she was not aware of all the details Dr. Dunham and Dr. Turner considered and how they arrived at their opinions, it is ethical for her to consider all opinions. Ochoa argued that because Dr. Gaines could not testify as to how the actuarials were scored or the reliability of the actuarials scored, the "scope of her testimony [should] be limited

8

to only her opinion and not the opinions nor the scoring instruments of Dr. Turner or Dr. Dunham." The trial court ruled that the scope of Dr. Gaines's testimony would not be limited in any manner.

Rule 705 of the Texas Rules of Evidence permits a trial court to admit the underlying facts or data on which an expert has based an opinion. *See* Tex. R. Evid. 705(a); *In re Commitment of Camarillo*, No. 09-12-00304-CV, 2013 Tex. App. LEXIS 7212, at *9 (Tex. App.—Beaumont June 13, 2013, no pet.) (mem. op.). A trial court does not abuse its discretion by allowing experts to testify about non-testifying experts' opinions when "these were matters the evidence shows were reviewed by these experts to form opinions." *In re Commitment of Garcia*, No. 09-12-00194-CV, 2013 Tex. App. LEXIS 14986, at **15-17 (Tex. App.—Beaumont Dec. 12, 2013, pet. denied) (mem. op.); *see also In re Commitment of Winkle*, 434 S.W.3d 300, 314-16 (Tex. App.—Beaumont 2014, pet. denied). In an SVP case, generally an expert may take another expert's findings into consideration when forming an opinion of whether the respondent suffers from a behavioral abnormality. *See Garcia*, 2013 Tex. App. LEXIS 14986, at **15-17; *see also In re Commitment of Waite*, No. 09-15-00364-CV, 2016 Tex. App. LEXIS 4772, at **8-9 (Tex. App.—Beaumont May 5, 2016, no pet.) (mem. op.) (Dr. Self testified that as part of his methodology he reviewed actuarials scored on Waite by

9

Dr. Turner and Dr. Mauro and testified what the scores indicated); *In re Commitment of Perez*, No. 09-15-00126-CV, 2015 Tex. App. LEXIS 12536, at *11 (Tex. App.—Beaumont Dec. 10, 2015, no pet.) (mem. op.) (Dr. Arambula testified that as part of his methodology he reviewed actuarial administered to Perez by Dr. Turner and testified what the score indicated); *In re Commitment of Smith*, No. 09-15-00091-CV, 2015 Tex. App. LEXIS 12092, at *13 (Tex. App.—Beaumont Nov. 25, 2015, no. pet.) (mem. op.) (Dr. Tennison testified that as part of his methodology he reviewed actuarial results completed by a psychologist and he testified as to what the score indicated); *In re Commitment of Ramsey*, 09-14-00304-CV, 2015 Tex. App. LEXIS 2844, at *8 (Tex. App.—Beaumont Mar. 26, 2015, pet. denied) (mem. op.) (Dr. Clayton testified that as part of her methodology she reviewed the actuarial test administered to Ramsey by Dr. Dunham and another SOTP evaluator and testified as to what that score indicated). The trial court did not abuse its discretion in denying Ochoa's request to limit the scope of Dr. Gaines's testimony.

Furthermore, Ochoa has not alleged that the trial court's ruling prevented him from presenting his points on appeal. *See* Tex. R. App. P. 44.1(a). Additionally, the trial court gave the jury an oral limiting instruction and a written limiting instruction relating to the particular testimony at issue. Ochoa did not

object to either instruction at trial, nor does he argue on appeal that the instructions were in any way deficient. We presume that the jury followed the court's instructions. *See In re Commitment of Day*, 342 S.W.3d 193, 199 (Tex. App.— Beaumont 2011, pet. denied). Issue two is overruled.

CONSTITUTIONAL CHALLENGE

In his third issue, Ochoa argues that the SVP statute "as amended by Senate Bill 746 is facially unconstitutional because it requires all persons adjudicated as sexually violent predators to live in oppressive confinement with no evidence they cannot be treated in an outpatient model first," and Ochoa argues that, "as amended, the statute fails the 'intent-effects test' utilized by the Texas Supreme Court in *In re Commitment of Fisher*, 164 S.W.3d 637 (Tex. 2005)." Ochoa contends that the findings of the trial court judge in another civil commitment regarding Alonzo May equally apply to Ochoa, and Ochoa argues that "[w]ith the passage of SB 746, several of the factors the *Fisher* court analyzed under the 'intents-effects test' have been rendered moot by SB 746."

Effective June 17, 2015, Senate Bill 746 amended Chapter 841 of the Texas Health and Safety Code in several respects. *See* Act of May 21, 2015, 84th Leg. R.S., ch. 845, 2015 Tex. Sess. Law Serv. 2700, 2700-12. The Legislature created a new state agency, the Texas Civil Commitment Office (TCCO), with the

11

responsibility for treatment and supervision of sexually violent predators.[4] *Id.* § 3 (current version at Tex. Health & Safety Code Ann. § 841.007 (West Supp. 2016)). The Legislature required the TCCO to develop a tiered program of supervision and treatment that provides a seamless transition from a total confinement facility to less restrictive housing and supervision and eventual release from civil commitment, based on the person's behavior and progress in treatment. *Id.* at § 16 (current version at Tex. Health & Safety Code Ann. § 841.0831 (West Supp. 2016). Under the statute as amended, the TCCO transfers a committed person to less restrictive housing and supervision if the transfer is in the best interests of the person and conditions can be imposed that adequately protect the community, and a committed person may petition the court for a transfer to less restrictive housing and supervision. *Id.* (current version at Tex. Health & Safety Code Ann. § 841.0834 (West Supp. 2016)). The enacting language of SB 746 provides:

> If a civil commitment requirement imposed under Chapter 841, Health and Safety Code, before the effective date of this Act differs from any of the civil commitment requirements listed in Section 841.082, Health and Safety Code, as amended by this Act, the applicable court with jurisdiction over the committed person shall, after notice and hearing, modify the requirement imposed as applicable to conform to that section.

*Id.* § 40(b).

---

[4] *See* Tex. Gov't Code Ann. § 420A.002 (West Supp. 2016). Throughout this opinion we refer to the Texas Civil Commitment Office by its acronym, "TCCO."

The statutory amendments about which Ochoa complains became effective on June 17, 2015, and Ochoa's trial began on September 8, 2015. The appellate record indicates that Ochoa did not raise the issue of the constitutionality of the amended SVP statute before or during trial, and he failed to raise the issue in his motion for new trial. Generally, to preserve a complaint for appellate review, the complaining party must present the complaint to the trial court by timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1).

We apply the preservation rule to constitutional challenges. *See In re L.M.I.*, 119 S.W.3d 707, 710-11 (Tex. 2003) (parent failed to preserve his due process challenge); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002) (party failed to raise constitutional argument that trial court's ruling violated open-courts provision in response to summary judgment motion and thus did not preserve it for appeal); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) (party waived due process and equal protection challenges by failing to raise them in trial court); *Lowe v. Jefferson Dental Clinics*, No. 05-11-00902-CV, 2012 Tex. App. LEXIS 3796, at **4-5 (Tex. App.—Dallas May 14, 2012, no pet.) (mem. op.) (appellant failed to preserve her challenge to the constitutionality of Chapter 74 by failing to raise the complaint in the trial court); *In re J.R.N.*, No. 09-08-00029-CV, 2010 Tex. App. LEXIS 2280, at **8-9 (Tex. App.—Beaumont Apr. 1, 2010, no pet.)

13

(mem. op.) ("The law is well settled that even constitutional errors may be waived by failure to raise the issues at trial."). Ochoa did not raise his constitutional challenges in the trial court. Therefore, he failed to preserve the issue for appellate review. *See* Tex. R. App. P. 33.1. Additionally, we have previously examined and rejected the same arguments in previous opinions. *See In re Commitment of Arnold*, No. 09-15-00499-CV, 2016 Tex. App. LEXIS 9351, at **13-16 (Tex. App.—Beaumont Aug. 25, 2016, no pet. h.) (mem. op.); *In re Commitment of Welsh*, No. 09-15-00498-CV, 2016 Tex. App. LEXIS 9325, at **1-4 (Tex. App.—Beaumont Aug. 25, 2016, no pet. h.) (mem. op.); *In re Commitment of May*, No. 09-15-00513-CV, 2016 Tex. App. LEXIS 8058, at **8-25 (Tex. App.—Beaumont July 28, 2016, no pet. h.). For the same reasons we articulated in *Arnold*, *Welsh*, and *May*, we find Ochoa's constitutional challenges unpersuasive. We overrule Ochoa's third issue. Having overruled Ochoa's issues, we affirm the trial court's judgment and order of civil commitment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on July 14, 2016
Opinion Delivered September 29, 2016

Before Kreger, Horton, and Johnson, JJ.