In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00216-CV**

_____


**IN RE COMMITMENT OF JAMES DOUGLAS STEWART**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-10-10874-CV**

**MEMORANDUM OPINION**

James Douglas Stewart appeals from a judgment on a jury verdict that resulted in his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.081(a) (West Supp. 2016). In four issues brought on appeal, Stewart argues that as amended in 2015, Chapter 841 of the Texas Health and Safety Code is facially unconstitutional, that the evidence is legally and factually insufficient to support the jury's verdict, and that the trial court erred in allowing the State to question him about an offense that resulted in a conviction because the State

lacked a good-faith basis for the questions. We overrule Stewart's issues and affirm the trial court's judgment and order of civil commitment.

## Constitutional Challenge

In his first issue, Stewart argues that Chapter 841 of the Texas Health and Safety Code, as amended in 2015 after the date of his trial, is facially unconstitutional because it requires all persons adjudicated as sexually violent predators to live in a "'total confinement facility' with the 'possibility' of 'less restrictive' housing at some unspecified future date depending on the person's progress in treatment." *See* Tex. Health & Safety Code Ann. § 841.0831(b) (West Supp. 2016). He argues that violating certain requirements of civil commitment bears severe criminal penalties, and as amended, the statute fails the "intent-effects test" utilized by the Texas Supreme Court in *In re Commitment of Fisher*. *See* 164 S.W.3d 637, 645–53 (Tex. 2005).

We addressed this issue in *In re Commitment of May*. *See* 500 S.W.3d 515, 520–24 (Tex. App.—Beaumont 2016, pet. filed). In *May*, we considered several factors in determining whether the amended statute is punitive, including: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of

2

punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *Id.* We held that "as in *Fisher*, taken together, the factors considered in determining whether this civil statute, as amended, is punitive point to a conclusion that a commitment proceeding under Chapter 841 of the Texas Health and Safety Code, as amended in 2015, is a civil matter." *Id.* at 524. We decline to revisit our holding in *May*, and we reiterate that Chapter 841 of the Texas Health and Safety Code, as amended in 2015, is neither punitive nor facially unconstitutional. *See id.*

We considered whether the statute as amended is unconstitutionally punitive for requiring total confinement and severe criminal penalties in *In Re Commitment of Terry*. *See* No. 09-15-00500-CV, 2016 WL 7323299, at *10 (Tex. App.— Beaumont Dec. 15, 2016, no pet. h.) (mem. op.). We held that

> [t]aken as a whole, the 2015 amendments reduce the possibility that a person subject to an SVP civil commitment order is punished criminally for violation of that order. Moreover, "the United States Supreme Court has never held that the imposition of criminal penalties for violating a civil regulatory scheme *ipso facto* renders an act punitive, rather than civil." *See Fisher*, 164 S.W.3d at 652–53 (citing *Smith v. Doe*, 538 U.S. 84, 90, 105–06 (2003) (holding that Alaska Sex Offender Registration Act was civil even though a knowing failure to comply would subject the offender to criminal prosecution) and *Hawker v. New York*, 170 U.S. 189, 192–94, 200 (1898) (holding that New York statute prohibiting

3

felons from obtaining licenses to practice medicine did not violate the ex post facto clause, despite criminal penalties imposed for failure to comply and explaining that "such legislation is not to be regarded as a mere imposition of additional penalty, but as prescribing the qualifications for the duties to be discharged and the position to be filled")).

*Id.* Stewart has not met his burden of providing "the clearest proof" that the amended statute is so punitive in either purpose or effect as to negate the stated Legislative intent that it be civil. *See Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) (quoting *United States v. Ward*, 448 U.S. 242, 248–49 (1980)). We overrule issue one.

## Sufficiency of the Evidence

Issues two and three challenge the legal and factual sufficiency of the evidence supporting the jury's verdict that Stewart is a sexually violent predator. Both issues were preserved through a motion for new trial. On appeal, Stewart argues the jury's verdict is based on two sexual offenses committed approximately twelve years apart and an expert's opinion that lacks an adequate basis.

Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for civil commitment as a sexually violent predator. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). As the factfinder, the jury has the responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable

4

inferences from basic facts to ultimate facts. *Id*. at 887. Under a factual sufficiency review in a civil commitment proceeding, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial.*" In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In a civil commitment proceeding under Chapter 841 of the Texas Health and Safety Code, the State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender[1] and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003(a) (West Supp. 2016). A "[b]ehavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2) (West Supp. 2016). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with

_____

[1] Stewart does not challenge his status as a repeat sexually violent offender in his appellate brief.

acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

A psychiatrist, Dr. Sheri Gaines, testified that in her opinion, Stewart has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Stewart argues Dr. Gaines's opinion provides no support for the jury's verdict because her diagnosis of "paraphilic disorder" is neither one of the eight specified paraphilic disorder diagnoses nor the "unspecified paraphilic disorder" in the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, or DSM–V. Dr. Gaines stated that Stewart's sexual deviancy is "exhibitionistic disorder" and "paraphilic disorder." According to Dr. Gaines, "[t]hat diagnosis covers his offending against non-consensual victims" and "covers the violence, the nonconsensual nature of those offenses." We conclude that Dr. Gaines identified an unspecified paraphilic disorder. Stewart's claim that Dr. Gaines provided false testimony is not supported by the record.[2]

---

[2] Stewart argues that for a psychiatrist to diagnose an unspecified paraphilic disorder, one of the eight specified paraphilic disorders must predominate but not meet the full diagnostic criteria. This proposition is not stated in the article he cites. *See* First, Michael B., *DSM-5 and Paraphilic Disorders*, 42 J. Am. Acad. Psychiatry & Law 191, 191–201 (June 2014) (available at http://www.jaapl.org/content/42/2/191.full and last viewed in January 2017). No expert testified on Stewart's behalf regarding the criteria for a diagnosis under the DSM-V.

Dr. Gaines considered facts and details from police reports and victim statements in forming her opinion. Stewart argues Dr. Gaines's consideration of this material was improper because Stewart did not have an opportunity to challenge the contents of his criminal records. We find no support in the record for this particular argument. Although he claims that he did not have an opportunity to challenge the contents of the records, the State filed a pre-trial notice of the filing of Stewart's records. Additionally, the record includes a Rule 11 agreement that Stewart's medical files would be available for inspection, and the parties agreed to disclose the medical material relied on by their experts through responses to disclosure. Stewart does not direct the Court to a record cite where he brought the State's failure to disclose Dr. Gaines's reliance on police reports and victim statements to the attention of the trial court.

Stewart contends that Dr. Gaines applied the risk factors of denial and minimization to Stewart, and he argues those factors were established through cross-examination to have no scientific support. Dr. Gaines stated that "[t]he two big categories of risk factors, the two big umbrellas of risk factors, are the sexual deviance and the unstable lifestyle." She explained that Stewart's sexual deviance is demonstrated through his convictions for indecency with a child by sexual contact and attempted aggravated sexual assault and through his prison disciplinary history

of twenty-eight instances of public masturbation and twelve for exposure. According to Dr. Gaines, Stewart was terminated from sex offender treatment in August 2014 for exposure. Dr. Gaines added that the broad potential victim pool and the extreme violence of the assaultive offense were additional risk factors. Although she did not diagnose Stewart as a psychopath, she explained that psychopathic characteristics such as lack of remorse, poor insight, lack of empathy, and unstable relationships were additional risk factors for Stewart. Dr. Gaines stated that Stewart was not forthcoming about his offenses and that pattern factored into her opinion because "in order to be able to get better, it's important to acknowledge what you've done wrong in the first place." According to Dr. Gaines, "the big factors are his sexual deviance, his psychopathic traits, that there's no evidence of change and that his past behaviors have been pervasive and repetitive." Dr. Gaines acknowledged that two researchers, Hanson and Conroy, were unable to find a relationship between minimization and sexual recidivism. Stewart does not identify where in the record Dr. Gaines stated that such a relationship existed, nor does he show how a lack of a statistical relationship between minimization and recidivism would render Dr. Gaines's testimony of no evidentiary weight.

The record demonstrates that Dr. Gaines reached her conclusions by following the methodology that she described in her testimony. Her methodology was not

challenged in the trial court. The record provides substantial support for the opinions expressed by Dr. Gaines during the trial, and her opinions about Stewart cannot be properly characterized as wholly conclusory, overly speculative, or without foundation. In light of the opinions expressed by Dr. Gaines, we conclude that rational jurors could find beyond a reasonable doubt that Stewart suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Kalati*, 370 S.W.3d 435, 439 (Tex. App.— Beaumont 2012, pet. denied). Because the evidence is legally sufficient to support the jury's verdict, we overrule issue two.

Stewart's factual sufficiency argument, like his legal sufficiency argument, is based entirely upon what he contends is the weakness of Dr. Gaines's testimony. Stewart did not present testimony from his own expert to refute Dr. Gaines's analysis or to provide a psychiatric basis for concluding that Stewart is not likely to commit a predatory act of sexual violence. Dr. Gaines's opinion testimony represents "a reasoned judgment based upon established research and techniques for his profession and not the mere *ipse dixit* of a credentialed witness." *Day*, 342 S.W.3d at 206. Weighing all of the evidence, we conclude the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See id.* at 213. We overrule issue three.

## Good-Faith Basis for Questions

In his fourth issue, Stewart argues that the trial court erred in allowing the State to question Stewart about one of his predicate offenses, an attempted aggravated sexual assault that Stewart committed in 1993. Stewart pleaded guilty to the indictment, which alleged that he exposed his penis, hit the complaining witness with a brick, and pulled at her shorts with his hands. Over a running objection to hearsay, Dr. Gaines was allowed to describe the offense. The trial court instructed the jury that

> hearsay is a statement other than one made by a declarant while testifying in trial or hearing. It is offered to prove the truth of the matter asserted. Certain hearsay information contained in records reviewed by experts is admitted before you through expert testimony. Such hearsay is admitted only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.

Later, the State questioned Stewart about this offense. Stewart objected once that the question was argumentative and that there was no good-faith basis for the questions.

In his appellate brief, Stewart argues that the State's line of questioning was designed to elicit a series of denials from Stewart, when the details of the offense had been admitted through Dr. Gaines solely to explain the basis for her opinion. Stewart's in-court testimony was not hearsay. *See* Tex. R. Evid. 801(d).

We addressed a similar argument in *In re Commitment of Clemons*. *See* No. 09-15-00488-CV, 2016 WL 7323298, at \*11-12 (Tex. App.—Beaumont Dec. 15, 2016, pet. filed) (mem. op.). In Stewart's case and in *Clemons,* counsel did not lodge an objection until the State had asked more than a dozen questions regarding the details of the offenses. *See id.* at \*12. The court overruled the objection that the State's question was argumentative and without a good-faith basis, counsel did not request a running objection, and the line of questioning continued without further objection. *See id.* We conclude that Stewart waived this issue for appeal. *See id.*; *see* Tex. R. App. P. 33.1(a). Furthermore, as we noted in *Clemons*, the questions the State asked Stewart regarding the details of the offenses were relevant because testimony from Stewart concerning his offenses is relevant to the jury's determination of whether the defendant has a behavioral abnormality and is a sexually violent predator. *See Clemons*, 2016 WL 7323298, at \*12. We overrule issue four and we affirm the trial court's judgment and order of civil commitment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on March 1, 2016
Opinion Delivered February 16, 2017

Before Kreger, Horton, and Johnson, JJ.