In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00488-CV
_____

IN RE COMMITMENT OF DENNIS WAYNE CLEMONS

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 15-05-04729-CV

MEMORANDUM OPINION

We issued a memorandum opinion affirming the trial court's judgment and order of commitment in this case on October 20, 2016. Appellant Dennis Wayne Clemons (Clemons or Appellant) timely filed a motion for rehearing. We have this date now denied the motion for rehearing. Nevertheless, we withdraw our previous memorandum opinion and judgment issued on October 20, 2016, and substitute the following memorandum opinion and judgment in place thereof. *See* Tex. R. App. P. 19.1(b) (stating that our plenary power over a judgment expires thirty days after all timely filed motions for rehearing are overruled).

1

The State of Texas filed a petition to commit Clemons as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2016) (SVP statute).[1] A jury found that Clemons suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, and the trial court rendered a final judgment and an order of civil commitment. Clemons filed a motion for new trial, which the court denied. Clemons timely filed a notice of appeal. In five issues, Clemons challenges the constitutionality of the SVP statute, as amended, the admission of certain evidence at trial, and the sufficiency of the evidence. We affirm the trial court's judgment and order of civil commitment.

EVIDENCE AT TRIAL

Pen Packets and Admissions

Certified copies of Clemons's penitentiary packets were admitted into evidence as State's Exhibits 1, 2, and 3. State's Exhibit 1 includes a certified copy of a 1993 judgment for burglary of a habitation with intent to commit theft, to which Clemons pleaded guilty, and for which he was sentenced to five years in the Texas Department of Criminal Justice (TDCJ). Exhibit 1 also includes a certified

---

[1] We cite to the current version of the statute unless a previous version of the statute applies and the subsequent amendments would materially affect our analysis.

copy of a 1993 judgment adjudicating guilt for burglary of a building, to which Clemons pleaded guilty, and for which he was also sentenced to five years in TDCJ.

State's Exhibit 2 includes a certified copy of a 2004 judgment of conviction for Clemons's sexual assault against D.C., to which Clemons pleaded guilty and for which he was sentenced to two years in TDCJ.[2] State's Exhibit 3 includes a certified copy of a 2006 conviction for failure to register as a sex offender, to which Clemons pleaded guilty and for which he was sentenced to ten years in TDCJ. State's Exhibit 3 also includes a certified copy of a 2006 conviction for aggravated sexual assault against Z.J., to which Clemons pleaded guilty and for which he was sentenced to ten years in TDCJ.

Prior to calling any witnesses, the State read Clemons's responses to requests for admissions, wherein Clemons admitted his convictions, his pleas, and the punishment assessed for all his convictions as reflected in State's Exhibits 1, 2, and 3.

---

[2] We identify the victims by using initials. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[]").

3

Testimony of Dr. Darrel Turner

Darrel Turner, Ph.D., a clinical psychologist, testified for the State. Dr. Turner testified that about half of his work is forensic and consists of performing sex offender risk assessments and competency or sanity evaluations. Turner explained that he had conducted approximately eighty behavioral abnormality evaluations.

Dr. Turner explained that in making his assessment he looks at past behavior as well as risk factors. Turner explained to the jury that, after reviewing all available records, he then interviews the individual and performs a psychosexual evaluation, a risk assessment, and behavioral abnormality evaluation. He also conducts certain tests that are predictive of the individual's likelihood of reoffending. According to Turner, his methodology is supported by scientific literature, is "generally considered to be the most accepted and recommended best practices in the field of forensic psychology[,]" and his evaluation was done in accordance with his training as a psychologist and the acceptable standards in the field of forensic psychology.

Turner explained that the records he reviews include records of the individual's criminal history, including both sexual and nonsexual offenses, records from the TDCJ, medical and psychiatric reports, and police reports,

4

including victim statements and investigative reports. He also agreed that the records he reviews are the same type of records reviewed and relied upon by experts in his field. Dr. Turner explained that the records "provide factual, objective information, historical information about [] past behaviors which are excellent indicators of [] future behaviors." He also agreed that he found the records he reviewed on Clemons to be reliable but that he did not independently verify the records himself.

Dr. Turner testified that he interviewed Clemons for "[b]etween two and three hours." After reviewing the records and interviewing Clemons, Dr. Turner formed an opinion that Clemons has a behavioral abnormality that predisposes Clemons to engage in predatory acts of sexual violence.

According to Dr. Turner, "Clemons is sexually deviant today[]" and sexual deviance does not generally go away. Turner explained that, in making his evaluation,

> [t]he details of Mr. Clemons's sexual offenses are extremely important in determining whether he has a behavioral abnormality, largely because they speak to the two main risk factor categories, which are sexual deviance and antisociality. The details of his specific sex offenses are extremely violent, extremely heinous and speak directly to his sexual deviance and sadistic nature as well as his antisociality or his willingness to break the law, hurt and victimize other people to satisfy his sexual urges.

5

Turner testified that, in evaluating Clemons's sexual deviance, he considered Clemons's two convictions for sexually violent offenses as well as an assault that did not result in a conviction. Regarding the assault that did not result in a conviction, Turner explained that he understood that the victim recanted because she and Clemons had a child together, but that the records noted "numerous instances of arrests for [Clemons's] physical violence against her." Turner explained that he considered this offense in forming his opinion because "there is a lot of evidence that was supported by the witnesses. It -- it matches his MO of . . . his other sexual offenses. The use of a weapon, the threatening, the sadistic, violent sex and rape, and . . . it can't be ignored."

According to Turner, one of Clemons's convictions was for his offense against D.C., the mother of one of his ex-girlfriends, whom he beat severely, choked repeatedly to the point of unconsciousness, threatened to kill, injured with a razor blade, and sexually assaulted. Turner explained that Clemons's conviction for his offense against Z.J. occurred after he had been in prison for his conviction against D.C. Turner told the jury that, in the assault against Z.J., Clemons choked Z.J. and, using an ornamental sword in Z.J.'s house, he

> . . . forced her back into a bedroom at knifepoint or swordpoint. He forced her into sexual activity, he threatened to kill himself, he threatened to kill her if she didn't comply, he threatened to kill her

6

children if she didn't comply with him, with his sexual demands. At one point he actually stabbed her.

Dr. Turner explained children were in the house when the offense against D.C. occurred, which Turner regarded as relevant and evidence of psychopathy because it showed Clemons's callousness, his inability to control his urges, and his sexual deviance. Turner also explained that Clemons performed multiple sex acts on Z.J., which Turner regarded a risk factor because "the more sexual acts that a person engages in in the course of rape is simply more evidence of sexual deviance." Dr. Turner also testified regarding another assault by Clemons on R.S., and he explained that the records he reviewed showed that Clemons struck R.S. with a board, choked her, threatened her with a knife, and forced her to engage in various sexual acts.

According to Turner, Clemons "takes no accountability for the fact that he has violently raped these women." Turner noted that Clemons's pattern of using a weapon was a risk factor because "he's going to do more damage with a weapon[,]" and Turner explained that Clemons had used a sword, a board, a knife, and a razor blade as weapons in his assaults. Dr. Turner explained that Clemons is

> . . . a violent individual, but he is also a very violent sexual individual. His cases are, as I said, very -- very heinous cases, severe injuries to these women, threat of death. So while he does have a history of violence, his -- his sexual offenses indicate a serious predilection toward sexual violence specifically.

7

Turner explained that Clemons's pattern of violence and sexual violence increases his risk of reoffending because "[Clemons] feels fine about what he's doing. He doesn't see anything wrong with what he's doing because his belief system is such that it's okay to be violent against women."

Dr. Turner testified that he conducted a PCL-R actuarial assessment of psychopathy on Clemons. Turner explained that Clemons's score on factor one of the PCL-R was a "15[,]" which indicated that Clemons "has more psychopathic personality characteristics than about 97 percent of inmates on whom the test was normed." Dr. Turner also interpreted Clemons's score to reflect that he is manipulative, a pathological liar, and has a grandiose sense of self-worth. Dr. Turner testified that Clemons's overall score on the PCL-R was "33 out of 40[,]" which indicated "a very high degree of psychopathic characteristics."

Turner also scored another actuarial for Clemons, the Static-99R. Dr. Turner explained that Clemons's score of "3" on the Static-99R placed Clemons in a "low-moderate risk level." Turner testified that he did not think Clemons's score on this actuarial indicated Clemons's actual level of risk.

According to Dr. Turner, Clemons had only one day of sex offender treatment, which was of concern to Dr. Turner because

. . . with someone with this degree of personality disorderedness, he needs information about situations that are high risk for him, he needs information about his sexual deviance, he needs information about what his actions do to victims and their families emotionally, physically, everything that treatment provides essentially he needs.

In Dr. Turner's opinion, Clemons does not have the tools necessary to control his sexual offending.

Turner diagnosed Clemons with paraphilia not otherwise specified with sadistic features, and mixed personality disorder with features of borderline and antisocial personality disorders. Turner did not diagnose Clemons with a substance abuse disorder, but he noted Clemons had a history of substance abuse. Dr. Turner explained that Clemons has the following risk factors for reoffending: a history of sexual violence, a lengthy criminal history, lack of remorse, failure to take responsibility, antisociality, lack of insight, history of substance abuse, denigration and blame of the victim, failure to register as a sex offender, sexually offending after incarceration for a sexual offense, a pattern of escalating violence and sexual violence. According to Turner, Clemons represents a "very high risk of sexually violent reoffending[.]"

Testimony of Dr. Lisa Clayton

Lisa Clayton, M.D., a physician specializing in psychiatry and board-certified in general and forensic psychiatry, also testified as an expert for the State.

9

Dr. Clayton testified that she has practiced forensic psychiatry for twenty-two years and she has performed "around 174" behavioral abnormality evaluations over a fifteen-year period.

Dr. Clayton described the methodology she uses in conducting a behavioral abnormality evaluation, which includes a review of all available records and conducting a "face-to-face psychiatric evaluation interview[.]" She agreed that the methodology she uses is the method used by experts in her field performing this type of evaluation. After reviewing the records and interviewing Clemons, Dr. Clayton formed an opinion that Clemons has a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence.

Dr. Clayton testified that, in this case, she reviewed the following type of records: records of the sex offender risk assessment team, police reports, prison records, prison medical records, educational records, penitentiary packets, and the deposition of Dr. Turner. She agreed that these are the same types of records typically reviewed and relied upon by experts in the field of forensic psychiatry when performing this type of an evaluation. Clayton also explained that her training included how to determine whether records are reliable. According to Clayton, "police reports, trial or District Attorney office records . . . are thought to be reliable[,]" but she does not verify the reliability of the records she reviews.

Clayton also explained that she personally met with Clemons for about two-and-a-half to three hours and she reviewed the results of actuarials conducted by Dr. Turner.

Based on her review of the records and her interview with Clemons, Dr. Clayton made the following diagnoses for Clemons: paraphilic disorder not otherwise specified with sexual sadistic features, antisocial personality disorder, other specified depressive disorder currently in remission, marijuana use disorder currently in institutional remission, and history of seizure disorders secondary to head injury. Dr. Clayton also explained that paraphilic disorder not otherwise specified and antisocial personality disorder are chronic conditions.

According to Dr. Clayton, she considered the facts of Clemons's offenses when forming her opinion of his behavioral abnormality. She explained that the facts and details of his offenses are important to know because she looks for patterns of behavior. Dr. Clayton testified that the physical injuries to one of his victims, D.C., indicated that Clemons "has used close-to-death violence against the victim he was sexually assaulting[,]" including choking to the point of unconsciousness. Clayton also noted that in his assault against Z.J., Clemons "subdued [Z.J.] with a knife" and threatened to kill Z.J.'s children who were in the next room. According to Dr. Clayton, the alleged offense against R.S., which did

11

not result in a conviction, also showed a pattern of using physical force and violence. The details of Clemons's offenses led Dr. Clayton to conclude that

> Mr. Clemons has been sexually stimulated as he was assaulting the women, physically he was harming them, doing physical damage to them. And then, also, that he was receiving -- he had sexual gratification in having the sex acts with the women against their will.

Clayton also noted that Clemons has a history of more than ten nonsexual assaults against women involving bodily injury, including one with deadly conduct. Dr. Clayton testified that Clemons's first arrest occurred when he was eleven years old, and that "he has had a lifetime of criminal history with mostly assaultive behavior." Dr. Clayton also characterized Clemons's criminality as steadily increasing from the age of eleven until he was incarcerated. According to Dr. Clayton, in her interview with Clemons, Clemons characterized himself as the victim in the assaults of which he has been accused and Clemons said the women lied.

Dr. Clayton identified the following risk factors that put Clemons at a high risk for reoffending: sexual deviance, unspecified paraphilic disorder with sadistic features, sexual sadism, antisocial personality disorder, a high degree of violence towards his victims, a history of other violent acts towards women, the absence of any sex offender treatment, substance use disorder, a history of anger, a history of a negative relationship with his mother, and a failure to acknowledge his

12

recidivism risk. Dr. Clayton testified that these risk factors are supported by research. According to Dr. Clayton, Clemons "is sexually deviant today[]" and that sexual deviance "does not go away." According to Clayton, a person's sexual preferences start at a young age and stay consistent, even if the person is not able to act upon their preferences due to incarceration or for other reasons. Clayton further explained that

> . . . individuals that have the sexual deviance and the consistent criminal characteristics or criminal history have the highest rate of acting or doing repeat sexual offenses, because they're individuals that have this urge, these sexual urges, but then they also have a history of disregarding laws.

> . . . .

> They have a history of disregarding laws and conforming their behavior in other situations. So when you couple that, it's essentially like squirting gasoline or lighter fluid on a fire. It can be a very potent combination as far as having -- more likely to commit future acts.

Dr. Clayton also agreed that Clemons does have some positive factors including family support and having a place to go after discharge. However, according to Dr. Clayton, these positive factors do not outweigh his other risk factors. According to Dr. Clayton, Clemons has had no sex offender training, he is in denial, and he does not have the tools he needs to keep him from reoffending sexually.

Testimony of Clemons

Clemons testified that before the age of eleven, he had engaged in theft, and that at the age of eleven, he robbed a store with his brother and shot a store attendant during the robbery. He testified that he was convicted of that offense and sent to juvenile detention. He also agreed that after being released on supervision, he returned to a State School "nearly eight times" for various violations. Clemons agreed that, during his teens, he was arrested for criminal mischief and that his supervision for the robbery was revoked due to an assault. According to Clemons, as a child, he was molested by a man in his neighborhood several times, and after he told his brother about the molestation, his brother beat the man up. Clemons testified that a female babysitter also molested him for a few years when he was in elementary school.

He agreed that he continued to break the law in his twenties, including being convicted multiple times for burglary of a building with the intent to commit theft and assault. He also agreed he was convicted of choking a woman, resisting arrest, failure to ID, being a fugitive from justice, possession of marijuana, and assault causing bodily injury to a family member.

Clemons agreed that he was convicted of assault causing bodily injury to R.S. in 2001, of assault causing bodily injury to a family member in 2002, and he

14

was convicted of resisting arrest and criminal mischief. He also agreed he was incarcerated for his conviction for aggravated sexual assault against Z.J.

Clemons agreed that he had struggled with psychiatric conditions for most of his life, including a diagnosis at age eleven of bipolar disorder, that he shot himself in the stomach at age nineteen, purposefully overdosed on seizure medication in a suicide attempt at age twenty, he was hospitalized for self-mutilation in his late twenties, and he was admitted to a mental hospital again in his early thirties. He agreed that, while incarcerated in his twenties, he was placed into a psychiatric unit. At the time of his civil commitment trial, he was on a psychiatric caseload and he has continued to have "angry outbursts[.]" Nevertheless, Clemons also testified that he had not had anger issues since he became a Christian in 2006. According to Clemons, he is not always able to obtain his medications while incarcerated, but he takes them a "[m]ajority of the time[.]" Clemons agreed he did not always take his medications in the free world. Clemons testified that, upon release from prison, he expects his mother to encourage him to remain compliant in taking his medications.

Clemons agreed that he has a history of violence toward women, but when asked about the details of the offenses for which he had been arrested or convicted, he denied most of the details concerning his assaults or that he sexually assaulted

15

the victims, and he denied using a weapon. However, he also agreed that he has been violent with women. And, he agreed he took a plea for the offenses against D.C. and Z.J.

Clemons agreed he has not had sex offender treatment. He testified that he does not need sex offender treatment and that he is not a sex offender. According to Clemons, he currently has "[z]ero[]" sex drive. When asked whether he planned on having sex upon release from prison, he responded that he could not answer that question but that he felt that he deserved better women than the ones he had previously been with and Clemons claimed that he would control his sexual urges upon release. Clemons denied sexually assaulting anyone or having fantasies of sexually assaulting anyone during a five-year period when he did not take his medication. Clemons denied that he gets pleasure from someone else's pain or from the thought of raping someone, and he denied having any such fantasies.

The defense called no witnesses. The State moved for a directed verdict on the limited issue of whether Clemons is a repeat sexually violent offender, to which the defense did not object, and the court granted the motion. A jury unanimously found Clemons to be a sexually violent predator beyond a reasonable doubt.

CONSTITUTIONAL CHALLENGE

In his first issue, Clemons argues that the SVP statute as amended by Senate Bill 746 is facially unconstitutional because it requires all persons adjudicated as sexually violent predators to live in oppressive confinement with no evidence they cannot be treated in an outpatient model first, and as amended fails the "intent-effects test" utilized by the Texas Supreme Court in *In re Commitment of Fisher*, 164 S.W.3d 637 (Tex. 2005). Clemons contends that the findings of a trial court judge as to another civilly-committed person, Alonzo May, equally apply to Clemons, and Clemons argues that the Supreme Court's holding in *Fisher* depended heavily on the fact that the prior version of the statute provided for outpatient treatment.

Effective June 17, 2015, Senate Bill 746 amended Chapter 841 of the Texas Health and Safety Code in several respects. *See* Act of May 21, 2015, 84th Leg., R.S., ch. 845, 2015 Tex. Sess. Law Serv. 2700, 2700-12. The Legislature created a new state agency, the Texas Civil Commitment Office (TCCO), with the responsibility for treatment and supervision of sexually violent predators.[3] *Id.* § 3 (current version at Tex. Health & Safety Code Ann. § 841.007 (West Supp. 2016)). The Legislature required the TCCO to develop a tiered program of supervision and

---

[3] *See* Tex. Gov't Code Ann. § 420A.002 (West Supp. 2016). Throughout this opinion we refer to the Texas Civil Commitment Office by its acronym, "TCCO."

17

treatment that provides a seamless transition from a total confinement facility to less restrictive housing and supervision and eventual release from civil commitment, based on the person's behavior and progress in treatment. *Id.* § 16 (current version at Tex. Health & Safety Code Ann. § 841.0831 (West Supp. 2016)). Under the statute as amended, the TCCO transfers a committed person to less restrictive housing and supervision if the transfer is in the best interests of the person and conditions can be imposed that adequately protect the community, and a committed person may petition the court for a transfer to less restrictive housing and supervision. *Id.* (current version at Tex. Health & Safety Code Ann. § 841.0834 (West Supp. 2016)). The enacting language of SB 746 provides:

> If a civil commitment requirement imposed under Chapter 841, Health and Safety Code, before the effective date of this Act differs from any of the civil commitment requirements listed in Section 841.082, Health and Safety Code, as amended by this Act, the applicable court with jurisdiction over the committed person shall, after notice and hearing, modify the requirement imposed as applicable to conform to that section.

*Id.* § 40(b).

Generally, to preserve a complaint for appellate review, the complaining party must present the complaint to the trial court by timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1). We apply the preservation rule to constitutional challenges. *See In re Commitment of Lucero*, No. 09-14-00157-CV, 2015 Tex.

18

App. LEXIS 1098, at *25 (Tex. App.—Beaumont Feb. 5, 2015, pet. denied) (mem. op.) (failure to make a constitutional challenge to the SVP statute at trial constituted a failure to preserve the issue for appeal); *In re Commitment of Dodson*, 434 S.W.3d 742, 747 (Tex. App.—Beaumont 2014, pet. denied) (failure to make a constitutional challenge to the SVP statute at trial constituted a failure to preserve the issue for appeal); *In re Commitment of Johnson*, 153 S.W.3d 129, 130 (Tex. App.—Beaumont 2004, no pet.) ("A complaint regarding the constitutionality of a statute is subject to the ordinary rules of procedural default.").[4]

The statutory amendments about which Clemons complains became effective on June 17, 2015, and Clemons's trial began on September 28, 2015. The appellate record indicates that Clemons did not raise the issue of the constitutionality of the amended SVP statute before or during trial, and he failed to

---

[4] *See also In re L.M.I.*, 119 S.W.3d 707, 710-11 (Tex. 2003) (parent failed to preserve his due process challenge); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002) (party failed to raise constitutional argument that trial court's ruling violated open-courts provision in response to summary judgment motion and thus did not preserve it for appeal); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) (party waived due process and equal protection challenges by failing to raise them in trial court); *Lowe v. Jefferson Dental Clinics*, No. 05-11-00902-CV, 2012 Tex. App. LEXIS 3796, at **4-5 (Tex. App.—Dallas May 14, 2012, no pet.) (mem. op.) (appellant failed to preserve her challenge to the constitutionality of Chapter 74 by failing to raise the complaint in the trial court); *In re J.R.N.*, No. 09-08-00029-CV, 2010 Tex. App. LEXIS 2280, at **8-9 (Tex. App.—Beaumont Apr. 1, 2010, no pet.) (mem. op.) ("The law is well settled that even constitutional errors may be waived by failure to raise the issues at trial.").

raise the issue in his motion for new trial. Therefore, he failed to preserve the issue for appellate review. *See* Tex. R. App. P. 33.1.

Nevertheless, Clemons argues that, after his own trial had concluded and the court denied his motion for new trial, a different trial court that was hearing Alonzo May's civil commitment case declared Chapter 841 as amended unconstitutionally punitive. *See In re Commitment of May*, No. 09-15-00513-CV, 2016 Tex. App. LEXIS 8058, at **5-8 (Tex. App.—Beaumont July 28, 2016, no pet. h.). Citing to *Ex parte Chance*, 439 S.W.3d 918, 919-22 (Tex. Crim. App. 2014) (Cochran, J., concurring) and *Ex parte Fournier*, 473 S.W.3d 789, 790 n.4 (Tex. Crim. App. 2015), Clemons argues that his constitutional claim on appeal should be considered timely because "'a person may always obtain relief from an indictment or a conviction based on a penal statute that has been previously declared unconstitutional.'" *See Chance*, 439 S.W.3d at 919 (Cochran, J. concurring). We find *Chance* and *Fournier* inapposite because those cases pertained to the constitutionality of a penal statute, and the SVP commitment statute is a civil statute. *See Fisher*, 164 S.W.3d at 653 (explaining that the SVP act is civil); *May*, 2016 Tex. App. LEXIS 8058, at *17 (concluding that the SVP act, as amended in 2015, remains civil).

Even if Clemons's challenge had been timely raised, as we explained in *May*, Chapter 841, as amended in 2015, is not unconstitutional. *See May*, 2016 Tex. App. LEXIS 8058, at \*\*7-18. In *May*, we specifically examined and applied the factors as outlined in *Fisher*. *Id.* For the same reasons discussed in *May*, we conclude the statute remains civil, and we reject Clemons's constitutional challenge. We overrule Clemons's first issue.

RELIABILITY OF THE EXPERTS' TESTIMONY

In his second issue, Clemons argues that the evidence to support his commitment is legally insufficient because it is based on the opinions of the State's experts, and he challenges the State's experts' opinions as facially unreliable, speculative, and conclusory because the experts relied on "unreliable and objected-to" hearsay evidence. Clemons argues that, based on the face of the record, this unreliable hearsay should be considered incompetent and speculative evidence and thus "legally, no evidence."

At trial, Clemons made a hearsay objection to Dr. Turner and Dr. Clayton testifying about the facts and details of Clemons's offenses. The court allowed the testimony, and Clemons requested a running objection. Upon request of defense counsel, the court gave a limiting instruction to the jury, and the jury's charge also included a limiting instruction.

21

Citing to *Coastal Transportation Co. v. Crown Central Petroleum Corp.*, 136 S.W.3d 227, 232-33 (Tex. 2004) and *Arkoma Basin Exploration Co. v. FMF Associates 1990-A, Ltd.*, 249 S.W.3d 380, 388 (Tex. 2008), Clemons argues that he is permitted to argue for the first time on appeal that the experts' opinions were based on unreliable facts-and-details evidence that rendered their opinions speculative or conclusory on their face. The Texas Supreme Court noted in *Coastal*, that opinion testimony that is conclusory or speculative is not relevant evidence because it does not tend to make the existence of a material fact "'more probable or less probable.'" *Coastal Transp. Co.*, 136 S.W.3d at 232 (quoting Tex. R. Evid. 401). Clemons argues that an objection at trial is not needed to preserve a no-evidence challenge to conclusory expert testimony. *Id.*; *Arkoma Basin Expl. Co.*, 249 S.W.3d at 388.

This Court has previously held that, under Rule 705(a) of the Texas Rules of Evidence, experts may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data upon which they relied, and they may discuss the defendant's prior offenses as part of the basis for the experts' opinions. *See, e.g.*, *In re Commitment of Camarillo*, No. 09-12-00304-CV, 2013 Tex. App. LEXIS 7212, at **8-10 (Tex. App.—Beaumont June 13, 2013, no pet.) (mem. op.); *In re Commitment of Day*, 342 S.W.3d 193, 197-99 (Tex. App.—

22

Beaumont 2011, pet. denied). We have previously overruled similar arguments regarding the disclosure of information on which experts relied in forming their opinions. *See In re Commitment of Garcia*, No. 09-12-00194-CV, 2013 Tex. App. LEXIS 14986, at \*\*15-17 (Tex. App.—Beaumont Dec. 12, 2013, pet. denied) (mem. op.); *In re Commitment of Reed*, No. 09-11-00484-CV, 2012 Tex. App. LEXIS 2493, at \*\*2-6 (Tex. App.—Beaumont Mar. 29, 2012, no pet.) (mem. op.); *Day*, 342 S.W.3d at 197-99. Rule 705 provides that if otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request. Tex. R. Evid. 705(d). We presume the jury followed the court's limiting instructions. *Day*, 342 S.W.3d at 199.

Based on our review of the record, we conclude that the testimony of Dr. Turner and Dr. Clayton was not conclusory or speculative. Both Dr. Turner and Dr. Clayton are licensed in their respective fields. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at \*14 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). Even assuming, without deciding that the facts and details of Clemons's offenses may have contained hearsay, the record reflects that Drs. Turner and Clayton based their opinions on all the records they reviewed, their interviews with Clemons, the risk assessments they conducted, and the actuarial tests administered. *See id.* They explained in detail the evidence they

23

relied upon in forming their opinions and how that evidence contributed to their evaluations. *See id.* Both experts concluded that Clemons suffers from a behavioral abnormality as defined by the SVP statute. *See id.* Their testimony is not so speculative or conclusory as to be completely lacking in probative value or constitute "no evidence." *See id.*

Appellant also argues that the experts relied on "unreliable hearsay contained in police reports" and citing to *Cole v. State*, 839 S.W.2d 798 (Tex. Crim. App. 1992) (op. on reh'g), he argues that the reliability of this type of hearsay is suspect as a matter of law. We find *Cole* inapposite, as it was a criminal case in which the Court explained that certain police and governmental investigatory reports were "inherently unreliable[]" because they were prepared in anticipation of litigation. *Id.* at 804-05. Furthermore, Rule 803(8) of the Rules of Evidence generally provides an exception to hearsay for police records offered into evidence in a civil case. *See* Tex. R. Evid. 803(8). The burden is on the party opposing the admission of evidence to show its untrustworthiness. *See Corrales v. Dep't of Fam. & Protective Servs.*, 155 S.W.3d 478, 486-87 (Tex. App.—El Paso 2004, no pet.) ("[T]here is a presumption of admissibility and the burden is placed on the party opposing the admission of a report to show its untrustworthiness.").

24

In addition, Clemons argues that he was denied due process because he was not permitted to challenge the reliability of the facts-and-details evidence through cross-examination. Clemons's brief does not cite to any portion of the record supporting his argument that he was not permitted to cross-examine the experts. Furthermore, the record reflects that, Clemons's attorney did cross-examine both witnesses. Additionally, during Clemons's cross-examination of Dr. Clayton, although the State objected that the cross-examination was an attempt to make a collateral attack on Clemons's underlying conviction, the trial court overruled the State's objection and allowed the defense to proceed with the questioning because the State had opened the door to cross-examination on the facts of Clemons's offenses. Therefore, we find no support for Clemons's due process argument in the record. *See* Tex. R. App. P. 38.1(i). We overrule issue two.

## LEGAL AND FACTUAL SUFFICIENCY

In his third and fourth issues, Clemons argues that, even assuming the evidence upon which the experts relied was reliable, the evidence at trial was legally and factually insufficient to support the jury's finding beyond a reasonable doubt that Clemons has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Clemons argues that the evidence at trial does not support the experts' opinions. In particular, Clemons contends that the

evidence upon which the experts relied does not support their opinions. Clemons also argues that the experts' opinions are "simply incorrect" because they do not explain why Clemons never sexually assaulted anyone until he was almost thirty-two years old, despite the fact that his criminal history began at age eleven. According to Clemons, the failure of the experts to explain Clemons's chronology constitutes an analytical gap between the data the experts relied upon and their opinions that renders the experts' opinions conclusory and without evidentiary value. We disagree.

In an SVP civil commitment proceeding, the State bears the burden to prove beyond a reasonable doubt that the respondent has a behavioral abnormality. *See* Tex. Health & Safety Code Ann. § 841.062 (West Supp. 2016); *In re Commitment of Morales*, 98 S.W.3d 288, 291 (Tex. App.—Beaumont 2003, pet. denied). A person is a sexually violent predator if the person "is a repeat sexually violent offender[] and suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. § 841.003(a) (West Supp. 2016). A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the

person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2016).

Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Day*, 342 S.W.3d at 213.

A contention that an analytical gap existed between the data relied upon by an expert and the expert's opinion is a challenge to the methodology employed by the expert. *In re Commitment of Ortiz*, No. 09-09-00013-CV, 2010 Tex. App. LEXIS 5731, at *17 n.1 (Tex. App.—Beaumont July 22, 2010, no pet.) (mem. op.). Clemons did not assert before the trial court that there was an analytical gap between the experts' opinion and the data upon which the experts relied. *See* Tex. R. App. P. 33.1(a)(1)(A); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*,

136 S.W.3d 227, 233 (Tex. 2004) ("[W]hen a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis."); *In re Commitment of Barbee*, 192 S.W.3d 835, 843 (Tex. App.—Beaumont 2006, no pet.) ("[W]hen the complaint concerns the foundational data used or relied upon by the expert, a party must present a timely objection to the trial court to preserve any complaint for appeal.") (citing Tex. R. Evid. 103; Tex. R. App. P. 33.1; *Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 806-07 (Tex. 2002); and *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998)). Therefore, Clemons did not preserve this specific issue for our review.

In this case, both Dr. Turner and Dr. Clayton testified that Clemons suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Both Turner and Clayton gave Clemons multiple diagnoses, including paraphilic disorder not otherwise specified with sexual sadistic features and antisocial personality disorder, and they both also identified numerous factors that put Clemons at a high risk of reoffending, including Clemons's history of violence and sexual violence. Dr. Turner explained that the degree of physical and sexual violence Clemons demonstrated in his past offenses was indicative of

28

Clemons's inability to control his urges and his sexual deviance. Dr. Turner also testified that Clemons's scores on actuarials were associated with a risk of recidivism. Dr. Clayton testified that Clemons has not received sex offender treatment and does not have the tools he needs to avoid reoffending. Clemons himself testified that his criminal history began when he was age eleven and that he has a history of violence toward women. Clemons also testified that he is not a sex offender and he does not need sex offender treatment.

Clemons argues that the evidence is insufficient because the experts failed to explain why Clemons did not sexually assault anyone until age thirty-two even though his criminal history began at age eleven. No legal authority is cited in Clemons's brief to support this contention. The statute requires the State to prove, beyond a reasonable doubt, that a defendant currently suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. § 841.003(a); *see also* Tex. R. App. P. 38.1(i) (requiring an appellant's brief to cite to legal authorities). The State's experts testified that "Clemons is sexually deviant today[]" and that sexual deviance does not generally go away.

The jury was entitled to infer Clemons's current dangerousness from the evidence presented, including the experts' testimony, Clemons's past behavior, and

29

Clemons's own testimony. *See In re Commitment of Wilson*, No. 09-08-00043-CV, 2009 Tex. App. LEXIS 6714, at \*14 (Tex. App.—Beaumont Aug. 27, 2009, no pet.) (mem. op.). As the sole judge of the weight and credibility of the evidence, the jury could reasonably conclude that Clemons suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Lowe*, No. 09-14-00098-CV, 2014 Tex. App. LEXIS 10034, at \*6 (Tex. App.—Beaumont Sept. 4, 2014, no pet.) (mem. op.); *see also Wilson*, 2009 Tex. App. LEXIS 6714, at \*14; *Mullens*, 92 S.W.3d at 887. We conclude that the jury's verdict is supported by legally sufficient evidence and does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule Clemons's third and fourth issues on appeal.

## "FACTS AND DETAILS" TESTIMONY BY CLEMONS

In his fifth and final issue, Clemons argues that the trial court erred in allowing the State to question Clemons concerning the facts and details of his criminal history and prior conduct because "there was no good-faith basis" for this line of questioning. Clemons cites to thirteen pages of the reporter's record in which the State asked Clemons about details of his offenses, most of the questions resulting in a denial by Clemons. Clemons argues that the State had no good-faith basis or reasonable expectation of eliciting an affirmative answer to these

questions. Clemons further argues that "this improper questioning . . . allowed [the State] to sneak inadmissible and unreliable hearsay through the back door." Citing to *Vallone v. State*, 147 S.W.2d 227, 232 (Tex. Crim. App. 1941) (op. on reh'g), Clemons argues that the State may not propound questions that "obviously are not expected to elicit proof or lay a predicate for legitimate evidence." Therefore, according to Clemons, the State's questions of Clemons were "improper because the [State] obviously expected to elicit from Mr. Clemons denial after denial . . . to its questions without any good-faith basis or reasonable expectation of eliciting affirmative answers to them."

We review the admission or exclusion of evidence under an abuse of discretion standard. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *In re Commitment of McCarty*, No. 09-12-00083-CV, 2013 Tex. App. LEXIS 7855, at **4-5 (Tex. App.—Beaumont June 27, 2013, pet. denied) (mem. op.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We will not reverse a judgment on the admission or exclusion of evidence unless the appellant establishes that the trial court's ruling was in error and that the error was reasonably calculated to cause and probably did

cause the rendition of an improper judgment. *See McCarty*, 2013 Tex. App. LEXIS 7855, at \*5; *see also* Tex. R. App. P. 44.1(a)(1).

To preserve error concerning evidentiary rulings, a party's objection must be timely, and it must specifically state the grounds on which the objection is based, if the grounds are not apparent from the context. Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a); *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). Even if preserved, the erroneous "admission or exclusion [of evidence] is likely harmless if the evidence was cumulative, or if the rest of the evidence was so one-sided that the error likely made no difference." *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008) (footnote omitted). "[E]rror in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection." *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004); *see also Breof BNK Tex., L.P. v. D.H. Hill Advisors, Inc.*, 370 S.W.3d 58, 67 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("When an objection to evidence is properly made, the subsequent presentation of essentially the same evidence without objection waives any complaint regarding the admission of the evidence.").

The reporter's record reflects that defense counsel did not lodge an objection until the State had asked more than a dozen questions of Clemons regarding the details of the offenses. Defense counsel then objected that "[t]here's no good-faith basis for this line of questioning. Mr. Clemons has denied the details of the convictions, the details during his deposition, with his evaluation with Dr. Turner and with his evaluation with Dr. Clayton." The court overruled the objection, and the line of questioning continued for about ten pages. The defense made no further objection and did not request a running objection. Therefore, by his failure to object to the previous and subsequent questioning, Clemons has waived the issue for appeal. *See Volkswagen of Am., Inc.*, 159 S.W.3d at 907; *see also* Tex. R. App. P. 33.1(a).

We also disagree with Clemons's interpretation and application of *Vallone*. In *Vallone*, the Court of Criminal Appeals held that the State should not seek to admit testimony in a criminal proceeding of facts that are damaging to a criminal defendant by asking the defendant irrelevant questions or by asking questions that are not expected to elicit proof or lay a predicate for legitimate evidence. 147 S.W.2d at 232. The questions the State asked Clemons regarding the details of the offenses were relevant because in an SVP civil commitment proceeding, testimony from the defendant concerning his offenses is relevant to the jury's determination

of whether the defendant has a behavioral abnormality and is a sexually violent predator. *See, e.g.*, *In re Commitment of Haines*, No. 09-15-00526-CV, 2016 Tex. App. LEXIS 6405, at **17-18 (Tex. App.—Beaumont June 16, 2016, no pet.) (mem. op.); *Wilson*, 2009 Tex. App. LEXIS 6714, at *14 (a jury may infer current dangerousness from expert testimony and from a defendant's past behavior and his own testimony); *In re Commitment of Grinstead*, No. 09-07-00412-CV, 2009 Tex. App. LEXIS 228, at **18-21 (Tex. App.—Beaumont Jan. 15, 2009, no pet.) (mem. op.) (concluding that the jury could have reasonably inferred that the defendant lacked the ability to control his conduct based in part on his own testimony regarding his past acts and offenses). Clemons also fails to cite to any support in the record for his contention that the State lacked a good-faith basis for its questions. *See* Tex. R. App. P. 38.1(i).

In addition to Clemons's testimony, the jury heard testimony from Drs. Turner and Clayton concerning their evaluation of Clemons. Additionally, Clemons's pen packets were admitted into evidence without objection. Therefore, we cannot say that any error in admitting this questioning and testimony affected Clemons's substantial rights, and we cannot say that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See*

*Haines*, 2016 Tex. App. LEXIS 6405, at \*\*18-19; *see also* Tex. R. App. P. 44.1(a)(1). We overrule Clemons's fifth issue.

Having overruled all issues on appeal, we affirm the trial court's judgment and order of civil commitment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on August 3, 2016
Opinion Delivered December 15, 2016

Before Kreger, Horton, and Johnson, J.J.